MICHAEL KEATING

*v.*

MICHAEL HAYDEN.

*Filed at Ottawa March 29, 1890.*

APPEAL—*whether a freehold involved—determining route of private right of way.* Where the validity of a perpetual lease of a private right of way, or the right of the lessee to pass over the land of the lessor, is not contested, but the question is, whether the original route of the way had been changed, and, if so, whether the lessee was bound to return to such original route or had the right to continue the new one, and whether the new route had been unreasonably obstructed, it was *held,* that a freehold was not directly involved, within the statute relating to appeals.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Mc- Henry county; the Hon. CHARLES KELLUM, Judge, presiding.

Mr. JOHN B. LYON, for the appellant.

Mr. A. W. YOUNG, and Mr. O. H. GILMORE, for the appellee:

The nature of the suit and the record show no statutory grounds of appeal, either from circuit court or from Appellate Court, to this court, unless it be that a freehold is involved. Laws of 1887, p. 156.

No freehold is involved in this case, within the meaning of the statute regulating the jurisdiction of the Supreme Court. *Richards* v. *People,* 100 Ill. 423; *Galbraith* v. *Plasters,* 101 id. 444; *Railroad Co.* v. *Watson,* 105 id. 217; *Land Co.* v. *Peck,* 112 id. 431; *Zinc Co.* v. *La Salle,* 117 id. 411.

It is only where the freehold must have been directly the sub- ject of litigation,—not merely incidentally or collaterally,— that an appeal must be brought directly to this court. *Zinc Co.* v. *La Salle,* 117 Ill. 411; *Rose* v. *Choteau,* 11 id. 167; *Rail- road Co.* v. *Watson,* 105 id. 217.

A freehold must be directly involved, and its recovery the primary object of the suit, to authorize an appeal directly to this court. *Land Co.* v. *Peck,* 112 Ill. 431; *Railroad Co.* v. *Watson,* 105 id. 217.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

Before this case was taken on the regular call of the docket, appellee entered a motion to dismiss the appeal, for want of jurisdiction in this court. That motion was reserved to the hearing. It is conceded by both parties that the disposition of this motion depends solely upon the question as to whether or not a freehold is involved, within the meaning of the statute regulating appeals to this and the Appellate courts.

There being no written pleadings in the case, we are compelled to resort to the evidence to determine what the issues upon the trial were. The following statement, found in the opinion of the Appellate Court, is a fair deduction from all the testimony introduced upon the trial in the circuit court:

"This was an action of trespass, brought before a justice of the peace, by appellant, against appellee, to recover damages for throwing down a fence and leaving down bars on appellant's premises, through which openings thus wrongfully made, appellant's cattle went, on various occasions, and injured his crops. A trial was had before the justice, resulting in a verdict for the defendant, and an appeal was then taken to the circuit court. A trial was had there, again resulting in a verdict for the defendant. The plaintiff now brings the case here on appeal, and asks for a reversal because the verdict was against the evidence, and because the court erred in refusing plaintiff's second, sixth, and seventh to the seventeenth (inclusive) instructions.

"This controversy grows out of the use of a private right of way through the forty-acre lot belonging to appellant and used by appellee. As far back as in 1846 Thomas Keating and

Edward Loughlin owned land adjacent. One forty, owned by Loughlin, had no means of access to the public road except across a forty-acre lot owned by Thomas Keating. From 1846 to about 1886 Loughlin had crossed this forty to reach the public highway, under a parol license. In 1886 Thomas Keating and Edward Loughlin entered into a written contract of lease for the right, on the part of Loughlin and his heirs or assigns, to use this right of way across the land described, in consideration of the payment to Thomas Keating of ten dollars. The lease appears to be a perpetual one, subject only to the power of Loughlin to put an end to it by selling the forty acres in question, separate and apart from the balance of the farm."

The lease describes the line of the road as beginning at a certain point, and passing along the north side of the fence, as near as convenient, to a point on the road named in the lease. Loughlin and his tenants used the road without interruption until in 1886, but not always following the same line precisely, but the deviations were not important, and were with the knowledge of the plaintiff's grantor, as well as the plaintiff himself after he owned the land, and, so far as the evidence shows, without objection from plaintiff or his grantor. Plaintiff desired to make some changes in his fields and to change the line of the fence named in the lease, and some considerable length of time before this dispute arose, plaintiff had cut open another line of travel through this forty, for the defendant, a little way north of the original line of travel, which was accepted by defendant, and this new route used for some time. In 1886 plaintiff desired to enclose a portion of this forty under a different fence, and so change the boundaries of some of his fields, and for that purpose built a new fence across the new road and closed it up, but leaving the original line of travel again open for defendant. Defendant refused to abandon the new road and return to the old one, and on several occasions tore down the fence where it crossed the road. Plain-

tiff then erected a pair of bars, fourteen feet wide, for the use of appellee, using heavy poles fourteen feet long, three to five inches thick at the butts, for bars, in order to protect his crops from the trespasses of his cattle. The defendant refused to replace these bars after going through, and frequently left them down, and on one occasion broke down one panel of sixteen feet of fence adjoining the road, and on another broke down two panels of fence, alleging, as a reason, that there was not room enough for him to pass through the gate, and that a tree had been cut across the road, preventing him from reaching the gate.

Conceding that the above mentioned lease from Thomas Keating to Edward Loughlin vested a freehold estate in the latter, and that the defendant below was in a position to have availed himself of that title as a defense, no such issue was made on the trial. If such an issue could have been formed and tried in a justice's court, the defendant did not raise it. The validity of the lease, and the right of defendant under it to pass over the plaintiff's land, was not contested. The controversy between the parties was, whether, under the lease, defendant had a right to enter upon the plaintiff's premises at the place where he took down plaintiff's fence and refused to replace the bars, and whether, by placing bars at that place, plaintiff had unreasonably obstructed the easement over his land. The real contention between the parties was, whether the defendant was bound to return to the original route, or had a right to continue to use the new one. It is clear, therefore, that at most a freehold was only incidentally involved, which will not give this court jurisdiction. *Zinc Co.* v. *City of La Salle*, 117 Ill. 411.

The appeal will be dismissed.

*Appeal dismissed.*